BRIAN S. MEAD *v*. J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION, ET AL.
(12704)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 1—decision released May 20, 1986

*James C. Mulholland,* for the appellant (plaintiff).

*Louis B. Blumenfeld,* with whom was *Lorinda S. Coon,* for the appellee (defendant Aetna Life and Casualty Company).

*Joseph I. Lieberman,* attorney general, and *Robert M. Langer,* assistant attorney general, filed a brief as amici curiae.

PETERS, C. J. The dispositive issue on this appeal is the scope of an insurance company's statutory liability for alleged failure to conduct a reasonable investigation of a property damage claim against its insured. The plaintiff, Brian S. Mead, brought an action under General Statutes § 13a-144[1] against the named defend-

---

[1] "[General Statutes] Sec. 13a-144. DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general

ant, J. William Burns, commissioner of transportation of the state of Connecticut, to recover compensatory damages because the plaintiff's truck was damaged when it slid and overturned on an ice covered highway. The plaintiff joined with this cause of action two counts against the defendant Aetna Life and Casualty Company (hereinafter the insurer), which had undertaken to insure the state of Connecticut for claims brought under § 13a-144. The plaintiff alleged that the defendant insurer had knowingly and in bad faith refused to pay the plaintiff's claim without conducting a reasonable investigation based upon all the available information. In count two of his complaint, the plaintiff claimed that this alleged conduct violated the Connecticut Unfair Insurance Practices Act (hereinafter

---

description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

CUIPA); General Statutes §§ 38-60 and 38-61 (6) (d);[2] and that this violation entitled him to recover both compensatory and punitive damages. In count three of his complaint, the plaintiff claimed that this alleged conduct also violated the Connecticut Unfair Trade Practices Act (hereinafter CUTPA); General Statutes § 42-110b;[3] and that this violation entitled him to

[2] "[General Statutes] Sec. 38-60. UNFAIR PRACTICE PROHIBITED. No person shall engage in this state in any trade practice which is defined in section 38-61 as, or determined pursuant to sections 38-62 and 38-63 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance, nor shall any domestic insurance company engage outside of this state in any act or practice defined in subsections (1) to (12), inclusive, of section 38-61. The commissioner shall have power to examine the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 38-60 to 38-64, inclusive. When used in said sections, 'person' means any individual, corporation, association, partnership, reciprocal exchange, interinsurer, Lloyd's insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance, including agents, brokers and adjusters."

General Statutes § 38-61 (6) (d) lists as an unfair claim settlement practice: "Committing or performing with such frequency as to indicate a general business practice any of the following . . . (d) refusing to pay claims without conducting a reasonable investigation based upon all available information."

[3] "[General Statutes] Sec. 42-110b. UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

recover compensatory damages, punitive damages and attorney's fees. The trial court, *Corrigan, J.,* granted the motion of the defendant insurer to strike counts two and three of the plaintiff's complaint. After a separate hearing, the trial court, *Allen, J.,* found for the plaintiff on the first count of his complaint and adjudged that the defendant commissioner pay him $1700 in compensatory damages. On the motion of the plaintiff, in order to allow the filing of an appeal, the trial court, *Kelly, J.,* thereafter rendered a judgment on the second and third counts of the plaintiff's complaint in favor of the defendant insurer. The plaintiff has appealed only from the judgment on the motion to strike these latter counts of his complaint. We find no error.

It is well settled that "[w]here an appeal is taken from a judgment following the granting of a motion to strike, we take the facts to be those alleged in the amended complaint construed in a manner most favorable to the pleader. *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 472, 427 A.2d 385 [1980]; *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 550–51, 324 A.2d 919 [1973]; *Senior* v. *Hope,* 156 Conn. 92, 97, 239 A.2d 486 [1968]; *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 557, 227 A.2d 418 [1967]. For purposes of appeal, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. *DeMello* v. *Plainville,* 170 Conn. 675, 677, 368 A.2d 71 [1976]; *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 [1973]. See Practice Book, 1978, § 151." *Amodio* v. *Cunningham,* 182 Conn. 80, 82–83, 438 A.2d 6 (1980). In the plaintiff's amended complaint, he alleged that the defendant insurer had knowingly and in bad faith refused to pay *his* claim against the insured, but he did not allege that the insurer's conduct constituted a *general practice* of refusal to pay claims without a reasonable investigation. The trial court concluded

that these allegations did not suffice to establish a violation of either CUIPA or CUTPA and accordingly granted the motion to strike filed by the defendant insurer.

The plaintiff maintains that, in striking the second and third counts of his complaint that contained these averments, the trial court erred: (1) in construing CUIPA to require a litigant to prove more than a single violation of § 38-61 (6) (d); and (2) in construing CUTPA to require a litigant to prove a violation of CUIPA. The defendant insurer claims, as alternate grounds upon which to sustain the action of the trial court; see Practice Book § 3012 (a);[4] that: (1) CUIPA does not authorize a private cause of action; (2) neither CUIPA nor CUTPA authorizes a private cause of action by a third party claimant; and (3) neither CUIPA nor CUTPA authorizes a private cause of action against an insurer before the underlying action against the insured has been resolved. Because we agree with the trial court's construction of CUIPA and CUTPA, we need not reach the issues raised by the defendant's § 3012 (a) papers.

I

The first issue that we must address is the scope of liability imposed by CUIPA on the insurance industry. That issue raises two questions: (1) what kind of conduct is proscribed by CUIPA? and (2) who is authorized

---

[4] Practice Book § 3012 (a) provides: "The appellant shall send, as set forth in Sec. 3013, to the chief clerk of the supreme court at the same time the appellant sends him a copy of the appeal:

"(a) A preliminary statement of the issues intended for presentation on appeal. If the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial, or if he wishes to claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on the appeal, he may file a preliminary statement of issues within fourteen days from the filing of the appeal."

to enforce violations of CUIPA? The latter question would come into play only if we were to conclude, contrary to the view of the trial court, that the plaintiff's complaint had alleged conduct that constituted a violation of CUIPA.[5]

The provisions of CUIPA which the plaintiff invoked in the second count of his complaint are §§ 38-60 and 38-61 (6) (d). CUIPA, in § 38-60, forbids any person engaged in the business of insurance in this state from engaging "in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 38-60 to 38-64, inclusive." The plaintiff does not maintain that § 38-60 by itself affords him a remedy, but relies instead on the § 38-61 (6) prohibition of "unfair claim settlement practices." Among the "unfair claim settlement practices" that the latter section proscribes are: "[c]ommitting or performing with such frequency as to indicate a general business practice any of the following . . . (d) refusing to pay claims without conducting a reasonable investigation based upon all available information . . . ." The plaintiff argues that § 38-61 (6) (d) applies to his case, despite his conceded failure to allege a general business pattern of dereliction in investigation. The plaintiff advances two reasons in support of his argument. One of these is a linguistic analysis of the text of § 38-61 (6) (d), while the other relies on the relationship between federal and state regulation of insurance. Like the trial court, we find neither of these reasons persuasive.

The plaintiff's linguistic analysis focuses on the placement and the punctuation of the clause "with such frequency as to indicate a general business practice" in § 38-61 (6). According to the plaintiff, this clause modifies only the word "performing" and not the word

---

[5] This question was reserved for decision in *Griswold* v. *Union Labor Life Ins. Co.,* 186 Conn. 507, 521 n.12, 442 A.2d 920 (1982), where, as here, its resolution was not required.

"committing." Although neither "committing" nor "performing" is defined in CUIPA, the plaintiff urges us to assign a separate meaning to each word in order to avoid disregarding one of them as surplusage. He suggests that because "committing" has a volitional element not found in "performing," it was plausible for the legislature to have attached stricter conditions to liability for mere "performing" than to liability for "committing." The propriety of this reading of the statute is reinforced, he maintains, by the absence of punctuation setting off the modifying clause.

While the text of § 38-61 (6) (d) could indubitably be clearer, we believe the fairer reading of the governing language is to construe the "general business practice" clause as a modifier of both "performing" and "committing." A narrow construction of this provision is appropriate because CUIPA authorizes the imposition of criminal penalties for the commission of the conduct it proscribes. See General Statutes § 38-62 (b).[6] We have repeatedly held that ambiguity in penal statutes requires a construction limiting rather than expanding civil liability. *Caldor's, Inc.* v. *Bedding Barn, Inc.,*

---

[6] General Statutes § 38-62 (b) provides: "If, after such hearing, the commissioner determines that the person charged has engaged in an unfair method of competition or an unfair or deceptive act or practice, he shall reduce his findings to writing and shall issue and cause to be served upon the person charged with the violation a copy of such findings and an order requiring such person to cease and desist from engaging in such method of competition, act or practice and if the act or practice is a violation of section 38-61, the commissioner may at his discretion order any one or more of the following: (i) Payment of a monetary penalty of not more than one thousand dollars for each and every act or violation but not to exceed an aggregate penalty of ten thousand dollars unless the person knew or reasonably should have known he was in violation of section 38-60, 38-61, this subsection and subsection (e), in which case the penalty shall be not more than five thousand dollars for each and every act or violation but not to exceed an aggregate penalty of fifty thousand dollars in any six-month period; (ii) suspension or revocation of the person's license if he knew or reasonably should have known he was in violation of said sections and subsections."

177 Conn. 304, 316–18, 417 A.2d 343 (1979); *Nowak v. Nowak,* 175 Conn. 112, 124–25, 394 A.2d 716 (1978). This principle of statutory construction outweighs inferences derived from punctuation and duplicatory verbiage. Looking to the statute as a whole, we believe that claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct.

As a second reason for a contrary construction, the plaintiff asserts that a broad reading of CUIPA is required in order to implement legislative intent to preempt federal regulation. After the decision of the United States Supreme Court in *United States* v. *South-Eastern Underwriters Assn.,* 322 U.S. 533, 64 S. Ct. 1162, 88 L. Ed. 1440, reh. denied, 323 U.S. 811, 65 S. Ct. 26, 89 L. Ed. 646 (1944), holding that Congress had the authority under the commerce clause to regulate interstate insurance transactions, it became likely that insurance practices would come under the regulatory umbrella of the federal trade commission. As a result, Congress enacted the McCarran-Ferguson Act, 15 U.S.C. § 1012 (b), which authorized federal regulation of insurance only "to the extent that such business is not regulated by State Law." In response, the National Association of Insurance Commissioners in 1947 promulgated a model insurance trade practices act to assure continued state supervision of the insurance industry. That model act was the basis for this state's enactment of CUIPA in 1955, and the legislative history at that time demonstrates that the legislature intended to preserve state regulation of insurance practices. See 6 S. Proc., Pt. 6, 1955 Sess., pp. 2001–2002; 6 H. R. Proc., Pt. 2, 1955 Sess., pp. 1036–37. The model act was amended in 1971 to include a section regulating unfair claim settlement practices, and this state enacted these new provisions in 1973. According to the plaintiff, a state legislative concern to avoid federal

regulation would necessarily have led the legislature to intend to encompass all unfair settlement practices, whether they were single acts or whether they constituted a general business practice.

The plaintiff's argument finds little support in the existing authorities under the model act. The National Association of Insurance Commissioners, in its model regulations, interprets the model act as proscribing unfair claims settlements only if the insurer "performs any of the acts or practices . . . with such frequency as to indicate a general business practice." Houser, "Unfair Claims Settlement Practices Act—How the Courts Have Interpreted the Act," 15 The Forum 336, 347 (1979). Courts in other jurisdictions that have enacted the model act have construed its prohibitions to preclude liability for isolated instances of insurer misconduct. *Klaudt* v. *Flink*, 202 Mont. 247, 253–54, 658 P.2d 1065 (1983); *Hubbell* v. *Trans World Life Ins. Co.*, 50 N.Y.2d 899, 901, 408 N.E.2d 918, 430 N.Y.S.2d 589 (1980); *Jenkins* v. *J. C. Penney Casualty Ins. Co.*, 280 S.E.2d 252, 259–60 (W. Va. 1981); contra *Royal Globe Ins. Co.* v. *Superior Court*, 23 Cal. 3d 880, 890–91, 592 P.2d 329, 153 Cal. Rptr. 842 (1979); and see *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349, 450 N.E.2d 577 (1983) (issue expressly left unresolved). Although these opinions have not expressly addressed the issue of state preclusion of federal regulation, we may presume that the courts were familiar with the history and the origin of the model act. Furthermore, a leading treatise on the law of insurance takes the position that state legislation will comply with the opting-out provisions of the McCarran Act so long as the state statute undertakes general regulation of the insurance industry in that state. "It is not necessary that every possible problem which could possibly arise be regulated." 16A Appleman, Insurance Law and Practice (1981) § 8886, pp. 487–89.

In the light of these considerations, the motion to strike count two of the plaintiff's complaint was properly granted. The plaintiff having elected not to amend his complaint thereafter, the judgment for the defendant on this count was not in error. See Practice Book § 157.[7]

## II

The second issue that we must address is the scope of the liability imposed by CUTPA on the insurance industry. That issue also has two subparts: (1) is the insurance industry entirely exempt from CUTPA because that industry is regulated by CUIPA? and (2) if the insurance industry is not exempt from CUTPA regulation, may conduct that does not violate CUIPA constitute an unfair act or practice under CUTPA?

The plaintiff, supported by the attorney general as amicus curiae, urges us to hold that our statutes do not grant the insurance commissioner exclusive jurisdiction to regulate the conduct of the insurance industry. For the argument that the jurisdiction of the insurance commissioner under CUIPA is concurrent with that of the commissioner of consumer protection, the attorney general and private litigants under CUTPA, the plaintiff relies on statutory provisions in both of the governing statutes. In CUIPA, § 38-62 (d) states: "No order of the commissioner under sections 38-60 to 38-64, inclusive, shall relieve or absolve any person affected by such order from any liability *under any other laws* of this state." (Emphasis added.) In CUTPA, § 42-110b (a) provides that "[n]o person shall engage

---

[7] Practice Book § 157 provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

in . . . unfair or deceptive acts or practices in the conduct of *any trade or commerce.*" (Emphasis added.) In addition, CUTPA's exemption provision, § 42-110c (a), states: "Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States . . . ." In combination, these statutory provisions do indicate that the legislature elected to subject insurance practices to multiple rather than to singular regulatory supervision. This is a choice that the legislature was empowered to make. See *Mazzola* v. *Southern New England Telephone Co.*, 169 Conn. 344, 359, 363 A.2d 170 (1975).

The defendant's argument to the contrary calls to our attention the fact that the legislature enacted CUTPA at the same session at which it enacted amendments to CUIPA covering unfair settlement practices. According to the defendant, this simultaneity of enactment, coupled with the greater specificity of CUIPA, is evidence of legislative intent that the two statutes be assigned to separate rather than to overlapping spheres. The defendant's position is consistent with the CUTPA exemption provision as enacted in that year. In 1973, § 42-110c (a) expressly excluded "[t]ransactions or actions otherwise permitted *or administered* by any regulatory board." (Emphasis added.) In 1976, however, the legislature amended the CUTPA exemption section to substitute "under law as administered" for "or administered," and this is the language presently before us. Public Acts 1976, No. 76-303, § 1. This statutory history lends more strength to the argument of the plaintiff than of the defendant.

Although this court has not explicitly addressed the question of overlapping CUTPA and CUIPA jurisdiction, a recent case lends further support to the position of the plaintiff on this issue. *Griswold* v. *Union*

*Labor Life Ins. Co.,* 186 Conn. 507, 519–21, 442 A.2d 920 (1982), involved allegations of unfair trade practices in violation of General Statutes §§ 42-110b, 38-61 (1), 38-61 (6) (a), (d), (f), (g), (h) and (m). We there held that a litigant was "entitled to maintain a private right of action for monetary damages for alleged unfair trade practices, as defined by § 38-61, without first exhausting the administrative remedies under § 38-62." *Griswold* v. *Union Labor Life Ins. Co.,* supra, 520–21. Although the focus of attention in *Griswold* was on exhaustion of administrative remedies, its holding implicitly affirms the existence of a private cause of action under CUTPA to enforce alleged CUIPA violations. This inference is reinforced by *Griswold's* reservation of the question of "whether a similar action for damages is specifically authorized by § 38-62 (d)." Id., 521 n.12. We now expressly hold, as have a number of trial courts in this state, that the legislature has manifested an intention to make insurance practices the subject of two regulatory statutes, CUIPA and CUTPA. We concur in the reasoning of the Supreme Judicial Court of Massachusetts, interpreting substantially similar statutory language, that "[t]he mere existence of one regulatory statute does not affect the applicability of a broader, nonconflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter." *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72, 78, 365 N.E.2d 802 (1977).

The determination that it is possible to state a cause of action under CUTPA for a violation of CUIPA requires us to address the second question arising under count three of the plaintiff's complaint: Under what circumstances, if any, may conduct that does not violate CUIPA constitute an unfair act or practice under CUTPA? Despite our conclusion, in part I of this decision, that a single failure to conduct a reasonable inves-

tigation of an insurance claim, in the absence of a "general business practice," does not constitute a violation of CUIPA, the plaintiff maintains that he may pursue a CUTPA violation for a singular failure to investigate. We disagree.

The plaintiff cites our recent decision in *Conaway* v. *Prestia,* 191 Conn. 484, 464 A.2d 847 (1983), in support of his argument that conduct not specifically prohibited by CUIPA may nonetheless offend the public policy of that statute and therefore may be actionable under CUTPA. In *Conaway,* we noted that CUTPA directs us to the " ' "interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a) (1)) . . . as from time to time amended." § 42a-110b (b).' " *Conaway* v. *Prestia,* supra, 492; *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 533, 461 A.2d 1369 (1983). In order to provide guidance for CUTPA's general proscription of unfair or deceptive acts or practices, we adopted the standard of *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). *Conaway* v. *Prestia,* supra, 492–93; and see *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 756–57, 474 A.2d 780 (1984); *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 568, 473 A.2d 1185 (1984). Under that standard, the federal trade commission looks to a number of factors in deciding whether an action or practice is unfair: " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury

to consumers . . . . ' " *FTC* v. *Sperry & Hutchinson Co.,* supra, 244 n.5. In *Conaway* v. *Prestia,* we applied this standard to permit a CUTPA class action for damages against landlords who had collected rent for substandard dwelling units for which they had, in violation of statute, failed to obtain certificates of occupancy. Even though there was no statutory prohibition of such rent collections, we found that the governing statutes embodied a public policy which made it an unfair practice to collect rents for substandard housing. *Conaway* v. *Prestia,* supra, 492–93.

The plaintiff and the attorney general, as amicus curiae, argue that, under *Conaway* v. *Prestia* and the federal standard that it incorporates, this plaintiff may rely on a general public policy against unfair insurance practices that transcends the specific prohibitions of § 38-61 (6) (d). The plaintiff maintains that CUIPA's list of unfair settlement practices in § 38-61 (6) embodies a "concept of fairness" for insurance settlements that is enforceable under CUTPA, whether or not such acts or practices occur as part of a general business practice. Because, in the view of the plaintiff, the requirement of establishing a general business practice relates only to the issue of a technical violation of CUIPA, the underlying public policy established by CUIPA will be affirmed by permitting a CUTPA cause of action even when there is no violation of CUIPA.

The plaintiff's argument misconstrues the holdings of *Conaway* v. *Prestia,* supra, and of *Griswold* v. *Union Labor Life Ins. Co.,* supra. Although *Conaway* holds that CUTPA may authorize a cause of action that builds upon the public policy embodied in specific statutory provisions, such a CUTPA claim must be consistent with the regulatory principles established by the underlying statutes. In *Griswold,* we held that a litigant complaining of unfair insurance practices was entitled to maintain a private right of action under CUTPA "for

alleged unfair trade practices, as defined by § 38-61." *Griswold* v. *Union Labor Life Ins. Co.*, supra, 520. The definition of unacceptable insurer conduct in § 38-61 reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention.[8] Under CUTPA, as under CUIPA, a litigant is bound by this legislative determination.

We recognize that the Federal District Court in *Doyle* v. *St. Paul Fire & Marine Ins. Co.*, 583 F. Sup. 554, 557 (D. Conn. 1984), drew a contrary inference from our decision, in *Griswold,* that CUTPA authorized private causes of action to enforce a claim derived from CUIPA. The *Doyle* court concluded that it was implicit in the authorization of a private cause of action that an individual claimant should be permitted to seek redress without proof of a general course of conduct. In our view, it would be more anomalous to permit a CUTPA claim to override a CUIPA regulatory pattern than to require a private litigant, using modern discovery techniques or enlisting others in a class action, to comply with the statutory requirements of § 38-61.

We conclude, therefore, that the trial court correctly granted the motion of the defendant insurer to strike count three of the defendant's complaint. The court properly rendered judgment for the defendant on this count.

There is no error.

In this opinion the other judges concurred.

---

[8] We express no opinion about whether the facts alleged by the plaintiff would have afforded him a common law remedy. Where CUTPA applies, it permits a recovery of punitive damages and attorney's fees that the common law does not ordinarily permit.