[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants moved to strike the fourth and fifth counts of the revised amended complaint on the ground that each is legally insufficient because each count fails to state a claim upon which relief can be granted. The fourth count alleges a fraudulent conveyance and the fifth count alleges an unfair trade practice on the same factual allegations stated in the fourth count.
The plaintiff corporation is the owner of record of certain real property and assignee of certain rights and obligations set forth in a purchase agreement. The agreement, dated August 14, 1989, was executed by the assignor, PL Properties, a Connecticut General Partnership, (PL) and the defendant Schnip Development Corporation (SDC) and John Schnip who signed the agreement in order to provide a limited guaranty of SDC's obligations under the contract.
The facts preceding execution of the agreement essentially are not in dispute. SDC entered into a Land Development Agreement (LDA) with the City of New Haven for the development of a 20-acre site over a period of years at an approximate cost of $300,000,000.00. The project was entitled the "Downtown South-Hill North Development Project." At that time, the partnership owned two parcels of land within the proposed development site. On July 5, 1989, the New Haven Board of Aldermen approved the LDA which contained an agreement that the city would convey to SDC certain municipal property for initial development. One of the properties was the former Lee High School and athletic facility which SDC agreed to purchase for $6,350,000.00. A closing was scheduled for on or before February 8, 1990 and SDC immediately sought out tenants. One CT Page 9997 prospective tenant was Yale-New Haven Hospital.
The hospital's needs required that occupancy of the premises be made available by January, 1990. When the Board of Aldermen approved the LDA, it also approved an amendment to the New Haven Zoning Ordinance, pursuant to Section 65, to designate the entire project area a "Planned Development District" (PDD). The amendment made permissible the land uses contemplated by the proposed project. Negotiations between SDC and the hospital resulted in Yale-New Haven Hospital signing a letter of intent on August 15, 1989. After the July 5, 1989 votes by the Board, PL Properties expressed an intent to exercise the right of appeal of those decisions and, in early August, 1989, a demand was made on SDC to purchase PL's parcels for a "non-negotiable" price of $700,000.00 on or before August 14, 1989 in return for not filing an appeal.
The agreement between SDC and PL provided, inter alia, for a closing on February 1, 1991 with a conveyance to SDC of a good and marketable title to the PL properties ". . . such that a title insurance company in the State of Connecticut will insure subject only to the exceptions set forth . . . [t]he standard printed exceptions contained in the ATLA Title Insurance Policy, insuring Fee interests shall not be considered a defect of title. [SDC] shall obtain a Certificate of Title at [its] expense." The agreement further provided that the purchase price of $700,000.00 be made "[b]y non-refundable cash deposit of . . . $75,000.00; [c]ash or certified check at closing, subject to adjustments . . . $480,000.00" and a purchase money mortgage in the sum of $145,000.00. The agreement included a clause making its terms applicable to and binding upon ". . . the successors and assigns of the respective parties."
On January 31, 1991, SDC notified the plaintiff that it would not tender the purchase price and would not perform in accordance with the terms set forth in the agreement.
The motion to strike functions to test the legal sufficiency of the pleadings and admits all facts well-pleaded but does not admit the truth or accuracy of any opinions or legal conclusions stated in the pleadings. Ferryman v. Groton, 212 Conn. 138, 142
(1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). In ruling on the motion, the court is limited to the facts alleged in the complaint and must construe those facts in the light most favorable to the plaintiff. Gordon v. Bridgeport Housing CT Page 9998 Authority, 208 Conn. 161, 170 (1988); Meredith v. Police Commission, 182 Conn. 138, 140 (1980). If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied. Ferryman v. Groton, supra "This includes the facts necessarily implied and fairly provable under the allegations. . . ." Noble v. Marshall, 23 Conn. App. 227,229 (1990).
The fourth count alleges that the defendant, SDC, in assigning its rights and obligations arising from the LDA, to four limited partnerships, made a fraudulent conveyance because it deprived itself of sufficient property to satisfy its obligations to the plaintiff. The plaintiff theorizes that, but for the assignment, SDC would have acquired the property and, upon breaching the purchase agreement executed with the plaintiff, that property would have been available to satisfy any obligations due the plaintiff. In reviewing this claim, it is important to reiterate that well-pleaded facts are admitted for purposes of the motion to strike, not opinions or legal conclusions. Moreover, factual allegations in the complaint must support the elements of a cause of action. Ferryman v. Groton, supra; Noble v. Marshall, supra. The assignment by SDC was an assignment of rights to purchase and develop certain parcels of real estate from the city at some future date. There is no allegation by the plaintiff that SDC transferred any real property to the limited partnerships. The plaintiff goes on to allege that, when the limited partnerships subsequently exercised the assignments, the City of New Haven conveyed by quit claim deeds the subject parcels.
The conveyances of tracts of real property by the city occurred, however, only after the Board of Aldermen amended the LDA which had been approved on July 5, 1989. The amendment, dated October 5, 1989, occurred prior to SDC's assignment of its rights and obligations (October 17, 1989) but subsequent to the execution of the Development Agreement on September 6, 1989 by SDC and the City of New Haven. When the plaintiff's predecessor signed the purchase agreement with SDC, there was no executed Development Agreement. The plaintiff does not allege that the parcels owned by the city were ever an asset of SDC or that the city acted improperly in transferring title to the partnerships. Nor is there any allegation that SDC was a party to the conveyances between the partnerships and the city. Moreover, there is no allegation that the limited partnerships failed to pay adequate consideration for the parcels. CT Page 9999
The amendment to the Development Agreement removed SDC as the sole designated "sponsor" for the development project, substituting instead ". . . any partnership of which Schnip Development Corporation (or John I. Schnip individually) is the managing general partner . . . for the purposes of the acquisition, construction, rehabilitation, operation, management, and maintenance of the . . . Project . . . ." When the contract to purchase was executed on August 14, 1989, SDC had no legal rights under the Development Agreement and PL does not allege any claim of right pursuant to the Agreement nor any standing to compel the corporation to execute the Agreement had it failed or refused to sign as "sponsor".
The State of Connecticut adopted the Uniform Fraudulent Transfer Act (UFTA) in Public Acts No. 91-297. The act seems to define "transfer" more broadly than does the case law applicable at the time of this incident. The test governing fraudulent conveyance claims in this state is well-settled:
 "The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . . The party seeking to set aside the conveyance need not satisfy both alternatives." Tyers v. Coma, 214 Conn. 8, 11
(1990); Bizzoco v. Chinitz, 193 Conn. 304, 312 (1984).
The law is also well-settled that "[t]here is nothing fraudulent in conveying one's property to another, even without or upon an inadequate consideration or holding it in the name of another person, as between the immediate parties to such transaction." Hunt v. Davidow, 10 Conn. Sup. 545, 546 (Super Ct. 1942). Also, it has been held that "[i]n order to state a cause of action [for fraudulent conveyance], a third person . . . must allege such a relationship to the conveyor or the person for whom another holds property, as shows he is injuriously affected CT Page 10000 thereby." Id.
The factual allegations of the fourth count fail to contain the elements of a cause of action for fraudulent conveyance under our law. Even assuming, as the court must, that the development rights and obligations arising from the Development Agreement were "property", those rights had not vested in SDC prior to execution of the purchase agreement. Moreover, the amendment by the Board clearly did not divest SDC of its preferred status as sponsor since it required SDC or John I. Schnip individually (who is guarantor of SDC's obligations under the purchase agreement) to function as "the managing general partner" for the purposes stated in the amended agreement.
The allegations of the fifth count are those of the fourth count but conclude that the defendants' conduct constitutes an unfair trade practice in violation of General Statutes, Section42-110a, et seq. Numerous state trial courts have held that a simple allegation of breach of contract is insufficient to state a cause of action under CUTPA. See, Emlee Equipment Leasing Corporation v. Waterbury Transmission Inc., 41 Conn. Sup. 575,580 (1991, Blue, J.); LaMonte v. Rice, 3 CTLR 240 (January 30, 1991, Aronson, J.); Antonio v. Kaismann, 3 CTLR 44 (December 11, 1990, Ryan, J.); Aussenhandel v. Grant Airmass Corp., 2 CTLR 457 (October 17, 1990, Lewis, J.); Sanitary Services v. Curry Imports, Inc., 4 CSCR 729 (August 18, 1989, Pickett, J.); Mirante v. Eddy, 4 CSCR 719 (August 18, 1989, Pickett, J.); Jarasek v. Chrysler House Associates Limited Partnership, 4 CSCR 73 (December 2, 1988, O'Connor, J.); Janet Sachs, Inc. v. Magnotti,1 CSCR 879 (October 27, 1986, Higgins, J.).
Section 42-110b(A) provides, in part, that: "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business." In reviewing an allegation of a violation of the statute, courts generally have agreed with the holding in Koehm v. Kuhn, 41 Conn. Sup. 130, 139 (1987), aff'd., 18 Conn. App. 313
(1989).
 "[The] lawsuit instituted by the plaintiff is a single isolated instance as distinguished from unfair methods or competition and unfair or deceptive acts or practices in the conduct of any CT Page 10001 trade or commerce. A single instance or even isolated instances of unfair practices do not warrant actions under CUTPA. Mead v. Burns, 199 Conn. 651, 666, 509 A.2d 11
(1986). She [plaintiff] did not generally, as a restauranteur, conduct her trade or commerce by bringing lawsuits. . . ."
In the instant case, none of the allegations pertaining to this count can fairly be held to support the elements of a CUTPA violation. The detailed analysis adopted in Noble v. Marshall, supra, 229 is instructive in examining the claim here:
 "In determining whether a case falls within the scope of CUTPA's general description of unfair or deceptive practices, our courts have adopted the `cigarette rule' set forth in FTC v. Sperry Hutchinson Co., 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984); Siudyla v. ChemExec Relocation Systems, Inc., 23 Conn. App. 180, 186-87, [579 A.2d 578] (1990). Under that standard, three factors will be looked at to determine if an action or practice is unfair:"'"' (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law statute, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . .'" FTC v. Sperry 
CT Page 10002 Hutchinson Co., supra 244n.5" Mead v. Burns, 199 Conn. 651, 664-65, 509 A.2d 11 (1986)." Dow Condon, Inc. v. Anderson, 203 Conn. 475, 483, 525 A.2d 935 (1987).
Implicit in that analysis is the fact that all three criteria need not be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria separately or because, to a lesser extent, it meets all three. Atlantic Ridgefield v. Canaan Oil Co., 202 Conn. 234, 242, 520 A.2d 1008 (1987).
Again, the factual allegations of the fifth count cannot fairly be considered to contain the elements of a cause of action based upon CUTPA. Accordingly, the motion to strike the fourth and fifth counts of the complaint is hereby granted.
BY THE COURT
Leander C. Gray, Judge