[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CONNECTICUT NATIONAL BANK'S MOTION TO STRIKE
The function of a motion to strike is to test the legal sufficiency of the allegations set forth in the pleadings. CT Page 3944 Ferryman v. Groton, 212 Conn. 138 (1989). The court must construe the facts most favorably to the plaintiff when the motion is directed against the complaint. Given the allegations of this case, the plaintiff has not presented any reason why the issues raised by the motion to strike cannot be addressed by the court but of course opposes the motion.
There does not seem to be any dispute as to the factual background of this matter. The amended complaint states that one Sam Cocopardi purchased a cashier's check from the Connecticut National Bank (C.N.B.). This check was made payable to Community Savings Bank. This transaction occurred on June 1, 1992. Cocopardi on or about the same day delivered the check to the plaintiff who then presented it to the Community Savings Bank to pay off a loan she had previously obtained from the Community Savings Bank. When Community Savings Bank presented the check to CNB, CNB refused to pay it pursuant to a stop payment order CNB had placed on the cashier's check. CNB had issued this order because Cocopardi had bought the cashier's check drawn on an account at the Guilford Savings Bank having insufficient funds to cover that check.
As noted Community Savings Bank had accepted the cashier's check from the plaintiff in payment of a loan that bank had extended to her; that loan was collateralized by a security interest to Community Savings Bank on two certificates of deposits. After the stop payment order on the cashier's check Community Savings bank refused to cash the certificates of deposit or return them to the plaintiff upon her demand. See Amended Complaint "Count One", paragraphs 5 through 12.
As noted by the defendant nowhere in the complaint is it alleged that the plaintiff was a customer of CNB, that the cashier's check was issued to or for the plaintiff's benefit, or that CNB knew the check was going to be used by the plaintiff to satisfy a debt she owed the Community Savings Bank thus releasing the security interest of that bank on the plaintiff's certificates of deposit.
The defendant has moved to strike the Fifth Count because it claims it is legally insufficient. It also moves to strike the Sixth Count which raised a CUPTA claim against the defendant bank. CT Page 3945
1.
Both sides seem to agree that the statutory provisions which determine the propriety of this motion to strike are Sections 42a-3-411(b) and 42a-3-412 of the General Statutes. These statutes deal with the negotiability of cashier's checks and the right to enforce them. Both parties agree that under both these statutory sections in order to prevail the plaintiff must be a person entitled to enforce the instrument — was Michaud entitled to enforce the cashier's check is the question before the court.
Under the Uniform Commercial Code the phrase "person entitled to enforce an instrument" is defined in Section 42a-3-301
to mean:
 (i) the holder of the instrument (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 42a-3-309 or Section 42a-3-418 (D). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
The plaintiff claims she is a person entitled to enforce this instrument. Both sides seem to agree that the plaintiff can not rely on subsection (i) of 42a-3-301 — she is not a "holder" as defined in Section 42a-1-201 (20). Also subsection (iii) does not apply; 42a-3-309 and 42-3-418 (d) apply respectively to situations involving lost, stolen, and destroyed instruments and instruments paid by mistake. Thus the plaintiff does not allege that either subsections (i) or (iii) would apply to her claim.
The plaintiff can prevail against this defendant only if under subsection (ii) of 42-a-3-301 the plaintiff demonstrates that she "has the rights of a holder".
The defendant's argument is quite straight forward. Here the cashier's check was made payable not to Cocopardi, the purchaser but to Community Savings Bank. Under the code that would make the purchaser, Cocopardi, a "remitter", 42a-3-103(11). CT Page 3946 A remitter is not a "holder" under the code, see42a-3-302, comment 4, case 1, page 63 of 1994 Supplement to West edition of statutes.
The plaintiff then proceeds to advance an argument based on a definitional analysis. The comment to 42-a-3-301 states that "A nonholder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under Section 3-203a. It also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." There is no claim that the plaintiff is a subrogee. Section 42a-3-203
is entitled "Transfer of an instrument. Rights Acquired by transfer." It seems clear that under subsection (a) of that statute a "transfer" occurred here — it must be assumed the way the pleadings are framed that Cocopardi delivered the cashier's check to the plaintiff for the purposes of enforcing the instrument. Subsection (b), however, states that the transfer "vests in the transferee (Michaud) any right of the transferor (Cocopardi) to enforce the instrument including any right as a holder in due course." But as noted Cocopardi is a remitter and Cocopardi had no right to enforce the instrument as the remitter, and as the remitter and not a "holder" he cannot transfer any rights he may have as a "holder" — he has none — to Michaud.
In the court's opinion the defendant fails to recognize as the plaintiff points out that under the code a non-holder's rights to enforce a cashier's check may not necessarily be limited to any rights or status Cocopardi had as the remitter vis a vis the defendant bank who issued the cashier's check. That has to be the case since we are dealing with negotiable commercial instruments whose ease of use should where possible be encouraged. The comment to 42a-3-302, which defines a "Holder in Due Course", at paragraph 4 refers to a treatise by Professor Britton, Bills Notes, (1961) that indicates at common law a number of decisions held that "there was nothing in the position of the payee (of a negotiable instrument) which made it impossible for him (sic) to be a holder in due course. The comment, paragraph 4, goes on to say that "in a small percentage of cases it is appropriate to allow the payee of an instrument to assert rights as a holder in due course." The plaintiff in its brief goes on to quote a portion of Case to the comment which illustrates this point. CT Page 3947
"Case #1
 Case #1. Buyer pays for goods bought from Seller by giving to Seller a cashier's check bought from Bank. Bank has a defense to its obligation to pay the check because Buyer bought the check from the Bank with a check known to be drawn on an account with insufficient funds to cover the check. If the Bank issued the check to Buyer as payee and Buyer indorsed it over to Seller, it is clear that Seller can be a holder in due course taking free of the defense if Seller had no notice of the defense. Seller is a transferee of the check. There is no good reason why Seller's position should be any different if Bank drew the check to the order of Seller as payee. In that case, when Buyer took delivery of the check from Bank, Buyer became the owner of the check even though Buyer was not the holder. Buyer was a remitter. Section 3-103 (a)(11). At that point nobody was the holder. When Buyer delivered the check to Seller, ownership of the check was transferred to Seller who also became the holder. This is a negotiation. Section 3-201. The rights of Seller should not be affected by the fact that in one case the negotiation to Seller was by a holder and in the other case the negotiation was by a remitter. Moreover, it should be irrelevant whether Bank delivered the check to Buyer and Buyer delivered it to Seller or whether Bank delivered it directly to Seller. In either case Seller an be a holder in due course that takes free of Bank's defense.
Also see analysis concerning cashier's checks in Uniform Commercial Code, 3d ed., White Summers, Vol. 112 14-6
pp. 53 et seq. The plaintiff refers to Case #1 but leaves out two considerations which under the code commentary and in the White Summers analysis at page 55 are fatal to her claim. CT Page 3948 The plaintiff is not the payee of the cashier's check which is a crucial requirement if someone in the plaintiff's status is to be allowed rights greater than the remitter to enforce the check as a holder in due course. The plaintiff creates some notion of the plaintiff being the "intended" payee but there is no such concept in the code. When a bank issues a cashier's check to an identifiable payee other than the purchaser, then in a situation such as set forth in Case #1 the requirements of fluidity of commercial paper and a balancing of the equities between the two innocent parties would favor allowing the payee to proceed as a holder in due course. But in fairness how could the defendant bank be held liable to a non-payee where there is no indication or claim that the defendant bank had any idea that the cashier's check was being issued payable to Community Savings Bank so that the non-payee plaintiff could satisfy her debt to that bank.
There is an even additional flaw in the plaintiff's argument. Even if there can be such a person or entity as an "intended" payee that would have the rights of a payee in certain limited circumstances to be treated as a holder in due course the code would still not allow the plaintiff to enforce this check. The above mentioned code comment and the White Summers discussion at page 55 volume 1B both weigh the equities in favor of the payee in those "limited circumstances" situations because the payee pursuant to the transfer of the cashier's check from the remitter gave value or otherwise relied materially on the transaction. That, of course, is not the case here — the plaintiff received the check from Cocopardi for payment of a past debt and turned the check over to Community Savings Bank to pay a debt she owed to that bank. Clearly in such a scenario the balancing of the equities shouldn't require the defendant bank to be obligated to a non-payee with whom it had no dealings. The Fifth Count of the complaint against the defendant is stricken.
2.
The defendant has also moved to strike the sixth count alleging a CUPTA claim against the bank. Since the fifth count has been stricken the sixth count also must be stricken because it is based on the claim that the defendant's actions improperly prevented the plaintiff from enforcing the cashier's check. CT Page 3949
The defendant has also advanced an independent ground for striking the sixth count. It cites Bridgeforth v. Fleet Bank,7 Conn. L. Rptr. 27 (1992) and National Westminster Bank v. Giblin, 7 Conn. L. Rptr. 134 (1992) for the proposition that banks are not subject to CUPTA because (1) they are expressly exempted from the federal trade commission act on which CUPTA is based (2) they are otherwise subject to pervasive statutory regulation (3) "national" banks are subject to federal regulation concerning unfair and deceptive trade practices and CUPTA exempts transactions otherwise permitted under law as administered by any regulatory board or authority of the federal government, 42-110 (a)(1).
The court cannot determine from the pleadings whether the defendant is a "national" bank as defined by federal regulations and the insurance industry would be very surprised to learn that their companies, although heavily regulated, are subject to CUPTA claims but banks because they are heavily regulated cannot be, Mead v. Burns, 199 Conn. 651, 663 (1980).
The defendant also argues that "on a more general plane" a plaintiff must be a "consumer" or "competitor" with regard to a defendant bank's services to fall under the protections that CUPTA affords. SNET Credit Inc. v. Burkhart,7 Conn. L. Rptr. 158 (1992), and Jackson v. Whipple, 5 Conn. L. Rptr. 115
(1991) are cited.
Under the circumstances of this case this argument appears to assume what is at issue in this case. That is, it is not independent of the motion to strike the fifth count. If this court had held or an appellate court on review determines that banks issuing cashier's checks are subject to liability to people in the plaintiff's situation then certainly people in the same class as the plaintiff would be "consumers" entitled to advance a CUPTA claim, if such a claim were otherwise permissible.
In any event the court needn't decide these issues since it has stricken the fifth count. The sixth count because of that should also be stricken.
Corradino, J. CT Page 3950