[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #135
The following facts are not in dispute. On April 22, 1996, Harry L. Daniels and Margie Watson entered into a retail purchase order with Dan Perkins Chevrolet-Geo, Inc., to purchase a 1993 Hyundai Excel. Daniels and Watson financed $7,791.70 of the purchase price through the plaintiff, Family Leasing and Finance, Inc. Title to the automobile was taken in Daniels and Watson's names and they listed their address as 120 Judson Avenue, New Haven, Connecticut. Watson applied for automobile insurance with the defendant, Infinity Insurance Company. Watson named the plaintiff as a lienholder/lessor and loss payee. The defendant issued an insurance policy in Watson's name, effective from October 7, 1996 through April 7, 1997. On November 26, 1996, Watson was involved in an accident while driving the automobile. On the same date, Watson contacted the defendant to provide notice of the accident. On May 28, 1997, the defendant. sent notice to Watson that the insurance contract was rescinded for material misrepresentations on her application for insurance.[1] The defendant stated that the basis for the rescission of the contract was that although Daniels was a primary driver, he was not listed on the policy. In addition, the defendant stated that the garaging address was 120 Judson Avenue in New Haven, but the address listed on the application was 289 Park Road in Hamden. Consequently, the defendant did not pay the property damage bills and/or the lien value of the automobile. CT Page 12190
On December 19, 1997, the plaintiff filed a four-count complaint against the defendant alleging, inter alia, breach of contract, violations of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-816, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq. On February 15, 2000, the defendant filed an amended answer and special defenses.[2]
On April 26, 2000, the plaintiff filed a motion for summary judgment as to counts one, three and four of its complaint, on the issue of liability only. The plaintiff submitted a memorandum of law in support of the motion and the defendant submitted a memorandum in opposition thereto. Both parties have submitted supporting affidavits and various exhibits.
 I DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000).
 A Breach of Contract
The plaintiff moves for summary judgment on its breach of contract claim on the ground that as a loss payee under the insurance policy, the defendant is required to pay it for the losses sustained to the automobile. The plaintiff argues that under the terms of the insurance policy, the defendant agreed to protect the loss payee until ten days after the issuance of a notice of termination. Because a notice of termination was never sent to it, the plaintiff argues that the defendant's failure to pay the property damage bills and/or the lien value owed to it, constitutes a breach of the insurance contract. The CT Page 12191 plaintiff further argues that the insurance policy's exclusion for fraudulent acts or omissions is inapplicable because Watson's material misrepresentations were not the cause of the loss. Moreover, the plaintiff argues that the defendant's rescission of the insurance contract is void against it because it is an innocent third party.[3]
In opposition to the motion, the defendant argues that there are genuine issues of fact as to whether it breached the insurance contract. The defendant argues that it lawfully rescinded the insurance contract as a result of material misrepresentations in Watson's application for insurance.[4] The defendant further argues that the determination as to whether it lawfully rescinded the insurance contract depends upon an interpretation of the intentions of the contracting parties, which is a question of fact.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review construction of a contract of insurance presents a question of law. . . ." (Citations omitted; internal quotation marks omitted.) Imperial Casualty Indemnity Co. v. State,246 Conn. 313, 324-25, 714 A.2d 1230 (1998).
"A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . . Moreover, [t]he provisions of the policy issued by the defendant cannot be construed in a vacuum . . . They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." (Citation omitted; internal quotation marks omitted.) Community Action for Greater Middlesex County,Inc. v. American Alliance Ins. Co., 254 Conn. 387, 399-400, A.2d (2000).
In the present case, the accident occurred on November 26, 1996 and the CT Page 12192 defendant sent notice of the rescission of the insurance policy to Watson on May 28, 1997. (See Plaintiff's Memorandum of Law in Support of Summary Judgment, Exhibit A.) The record establishes that the plaintiff was a loss payee under the insurance contract. (See Plaintiff's Memorandum of Law in Support of Summary Judgment, Exhibit B, Insurance Policy Declaration Page.) In the loss payable clause of the contract, the defendant agreed to pay the loss payee for any losses or damages, even if the insured's acts or omissions violated the terms of the policy. (See Defendant's Objection to Plaintiff's Motion for Summary Judgment, Exhibit 1, Insurance Policy, p. 12.) Thus, although the insured's material misrepresentations on the insurance application violated the terms of the contract, the defendant agreed to protect the loss payee's interest, forany reason, up until 10 days after notice of the policy's termination was sent. (See Defendant's Objection to Plaintiff's Motion for Summary Judgment, Exhibit 1, Insurance Policy, p. 13.) Moreover, the court finds that the exclusion from coverage of the loss payee for fraudulent acts or omissions is inapplicable. The insurance contract provides that the defendant will not pay for any loss caused by fraudulent acts or omissions. (See Defendant's Exhibit 1, Insurance Policy, p. 12.) The record reveals that the loss was not caused by fraudulent acts or omissions. Indeed, the insured's material misrepresentations on the insurance application were not the cause of the loss.
Therefore, because the accident occurred during the period in which the defendant agreed to protect the plaintiff's interests; (see Defendant's Objection to Plaintiff's Motion for Summary Judgment, Exhibit 1, Insurance Policy, p. 13); the defendant was contractually bound to pay the plaintiff for the loss. Accordingly, the defendant's failure to pay the plaintiff either the property damage bills or the lien value of the vehicle was a breach of the terms of the insurance contract. Accordingly, the motion for summary judgment as to count one is granted.
 B Connecticut Unfair Insurance Practices Act
The plaintiff moves for summary judgment as to its CUIPA claim on the ground that it is an unfair insurance practice for a carrier to fail to pay the settlement amount of a constructive total loss. The plaintiff argues that it has proved that the total repair cost was greater than the automobile's value of $5,725. Moreover, the plaintiff argues that because its claim is not under § 38a-816 (6), which requires multiple unfair claim settlement practices, a single violation is the only condition under § 38a-816 (16).[5]
In opposition to the motion, the defendant argues that to establish a CT Page 12193 violation of CUIPA, the plaintiff must establish that its conduct constituted a general business practice. The defendant further argues that a determination of whether an insurer's conduct constitutes a general business practice is a question of fact.
"While a violation of Connecticut General Statutes section 38a-816 (6) requires an allegation of general business practice, sections 38a-816
(15) and 38a-816 (16) do not require such an allegation. A single act can constitute a violation of CUTPA where the underlying claim is a breach of contract." Maloni v. Vermont Mutual Ins. Co., Superior Court, judicial district of New Britain at New Britain, Docket No. 489281 (February 8, 1999, Robinson, J.) (23 Conn.L.Rptr. 40); see also Witham v. ITTHartford, Superior Court, judicial district of Waterbury, Docket No. 132891 (June 4, 1997, Leheny, J.).
Here, the plaintiff has established a constructive total loss, in that the total repair cost of the vehicle was greater than its value of $5,725. The plaintiff has also established that the defendant failed to pay its claim. Because a general business practice is not required under subsection (16) of § 38a-816; see Maloni v. Vermont Mutual Ins. Co., supra, 23 Conn.L.Rptr. 40; the court finds that the plaintiff has established a violation of CUIPA. Therefore, the plaintiff's motion for summary judgment as to count three of its complaint is granted.
 C Connecticut Unfair Trade Practices Act
"CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision of the act, § 42-110b (a), states merely that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. . . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit.'" (Citations omitted.) LarsenChelsey Realty Co. v. Larsen, 232 Conn. 480, 492, 656 A.2d 1009 (1995). "In a CUTPA or CUIPA claim, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claims settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. . . . In a CUIPA and CUTPA claim, the insurer's duty stems not from the private insurance agreement CT Page 12194 but from a duty imposed by statute." (Internal quotation marks omitted.)Heyman Associates No. 1 v. Ins. Co. of Pennsylvania., 231 Conn. 756,790, 653 A.2d 122 (1995). moreover, our Supreme Court has held that a litigant complaining of unfair insurance practices is entitled to maintain a private right of action under CUTPA for alleged unfair trade practices. See Mead v. Burns, 199 Conn. 651, 665-66, 509 A.2d 11 (1986).
Here, because the plaintiff has established a violation of § 38a-816
(16), the court finds that the plaintiff is entitled to judgment as a matter of law on its CUTPA claim. See Mead v. Burns, supra, 665-66. Therefore, the motion for summary judgment as to count four of the complaint is granted.
 II CONCLUSION
Based upon the foregoing, the plaintiff's motion for summary judgment as to counts one, three and four of its complaint is granted, on the issue of liability only.
 The Court By Grogins, J.