## LORRAINE SHAW KOEHM *v.* IDA KUHN ET AL.

SUPERIOR COURT  JUDICIAL DISTRICT OF  FILE NO. 226747
FAIRFIELD

Memorandum filed November 4, 1987

*Friedman, Mellitz & Newman,* for the plaintiff.
*Ida Kuhn,* pro se, the defendant.
*Anthony Caltabiano,* pro se, the defendant.
*Laurence V. Parnoff,* pro se, the defendant.

HON. IRVING LEVINE, STATE TRIAL REFEREE. The plaintiff has brought suit against three defendants, Ida Kuhn and Anthony Caltabiano, sister and brother, holders of a note and mortgage, and Laurence V. Parnoff, their attorney in the transaction out of which this suit arose. The plaintiff alleges that on January 1, 1983, she executed a note dated January 10, 1983, in the amount of $330,000 secured by a mortgage in favor of Kuhn and Caltabiano; that the note required that any notice be furnished to Parnoff; that the mortgage covered premises known as 4355 Main Street, Bridgeport, and contained a conditional assignment of rents; that on October 31, 1984, the plaintiff delivered a bank check in the sum of $66,572.07, the balance due on the note to Kuhn, notice of which was given to Parnoff, which notice demanded a release of the mortgage and the conditional assignment of rents; that more than 30 days had elapsed since the note was paid off; that the

check delivered to Kuhn recited on the back that it was full and final payment to the defendants; that Kuhn and Caltabiano illegally endorsed the check, with a special endorsement, to Parnoff, who deposited it in a trustee account; that all the defendants had no right to endorse the check without furnishing the release; that the plaintiff is aggrieved and that the defendants' actions have caused the plaintiff to incur legal fees, aggravation and emotional disturbances. The plaintiff claims damages pursuant to General Statutes § 49-8 (c) and a decree cancelling the note with a direction to the mortgagees to execute a release of the mortgage, and conditional assignment of rents. Kuhn and Caltabiano filed general denials, a special defense that the plaintiff is indebted to them on the mortgage note in addition to other debts, and a counterclaim alleging the special defense and seeking damages and payment of indebtedness not secured by the mortgage. Parnoff's answer admits some of the allegations of the complaint and denies the others, and he has filed three special defenses: (1) that he has no personal obligation to the plaintiff; (2) that Parnoff advised the plaintiff's attorney, Morton Weiss, prior to the delivery of the check, that a dispute existed as to the amount due and not to forward the check, and that the plaintiff's attorney agreed the check should be deposited; and (3) that the plaintiff is indebted to the defendants pursuant to her agreement for one half of a realtor's commission and $3500 plus accrued interest to Caltabiano, on the purchase price. Parnoff's counterclaim in two counts alleges (1) that in bringing suit against him, the plaintiff violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b (CUTPA), article first, § 10, clause 1, of the Connecticut constitution and the fourteenth amendment to the United States constitution, and thus acted maliciously and outrageously to his damage, and (2) that naming him as a defendant

constituted abuse of process, which deprived him of representing the other defendants, forced him to defend the suit, and added to the aggravation, stress and annoyance of each defendant. He claims monetary, exemplary and punitive damages, interest and attorneys fees. The reply denied the three special defenses and the counterclaims.

The facts are found as follows: The plaintiff purchased premises known as 4355 Main Street, Bridgeport, on which she operated a restaurant known as The Canteen from the defendant Kuhn. The contract for the sale of the property was drawn by Parnoff and dated December 9, 1982. It stated a price of $306,000, $6000 of which was payable with the execution of the contract and receipt thereof was acknowledged, with the balance payable at closing on January 7, 1983, by cash or certified check. The contract subsequently provided, however, for the payment of $300,000 by purchase money mortgage in that amount at 13 percent per annum payable in five years with monthly payments of $4175, including interest and principal and provided for refinancing after the five year period. The note, in fact, was $300,000 and not $330,000 as the complaint stated. It further provided that any notices required by the contract be sent to the plaintiff at her home, to Kuhn at her home and to Parnoff at his home. Although Caltabiano did not enter into the contract because record title was solely in Kuhn's name, she agreed and stated that he was a one-half owner of the premises, and the mortgage was issued to Kuhn and Caltabiano. The plaintiff also executed a conditional assignment of rents as additional security to the mortgage, and at the closing of title on January 7, 1983, she paid $100,000 in cash to Kuhn and Caltabiano, out of the presence of the parties' lawyers, and executed a note in the amount of $300,000 with interest at the rate of 13 percent per annum, payable in monthly

installments of $4175, beginning February 1, 1983. The note further provided for partial or full prepayment and required that any notice be sent to Kuhn and Parnoff. That note was secured by a mortgage on the premises conveyed by Kuhn to the plaintiff.

At the closing, the plaintiff, at the defendants' insistence, executed an agreement that payment of a real estate broker's commission would be shared equally. Thereafter, a real estate broker recovered a judgment in excess of $35,000 for a broker's fee, which is being appealed. The plaintiff paid the defendant $100,000 on December 24, 1983, and $100,000 on September 1, 1984. She also made twenty-one monthly payments of $4175 each for a total of $87,675. She hand delivered a bank check in the amount of $66,572.07 payable to Ida Kuhn on October 31, 1984. Thereafter, although the plaintiff's attorney Morton Weiss requested a release of the mortgage by letters of October 24, October 31, and December 18, 1984, Parnoff wrote Weiss a letter dated October 29, 1984, expressing disagreement with the plaintiff's figures and recommending that Weiss hold the check in an escrow account. On November 6, 1984, however, he notified Weiss that he was depositing the check in an interest bearing account until the dispute was resolved. When the check was delivered by the plaintiff to Kuhn, it had typed on the back: "In full and final payment and release mortgage from Lorraine S. Koehm to Ida Kuhn and Anthony Caltabiano dated January 1, 1983." Below that, the following endorsement appeared: "Pay to the order of Laurence V. Parnoff, Trustee for deposit in trust account until dispute resolved" and was endorsed by Ida J. Kuhn. A last endorsement "for deposit only" was made by Laurence V. Parnoff.

Three or four months later, Parnoff distributed the proceeds of the check to his clients, despite his letter to Weiss of November 6, 1984, stating that he would hold the money. On December 19, 1984, Par-

noff wrote Weiss that he had been delayed in listing the errors in computing the balance and that he did not consider the matter "of the utmost importance." On January 3, 1985, Parnoff wrote Weiss that $3000 plus interest thereon was still due and that while some minor interest was due, he would recommend its waiver. He also wrote that he was in possession of the release of the mortgage. On several occasions, Kuhn and Caltabiano told the plaintiff they had executed the release of the mortgage and could not understand why the plaintiff had not received it. Although the contract stated a total price of $306,000 the actual price was $406,000 with $100,000 having been paid in cash as hereinbefore described. Part of the reason for this type of arrangement was that the sellers had an offer from a third party who did not want disclosed that he had $100,000 in cash funds and that he was buying the premises for $400,000. Since the plaintiff had the first right of refusal to meet any offer, under her lease of the premises, she agreed to the cash payment and what appeared to be a $300,000 price, although it was in fact $400,000. The extra $6000 recited in the contract was a $2500 present for each seller, plus $1000 to make the contract greater than the one offered by the third party, however, the sellers did not intend that it be paid and the buyer so understood. The sellers explained that the $1000 was to make the sales price greater than the one offered by the third party, so that any claim for commission would be defeated. At the closing, the plaintiff gave Kuhn $2500, and the $3500 balance, which Kuhn had agreed Caltabiano could have, was deferred.

Thereafter, on several occasions Caltabiano relinquished his claim for the $3500 in no uncertain terms. This relinquishment was particularly evident to the court in the taped telephone conversations between the plaintiff and Caltabiano. Ordinarily, since the contract recites receipt of the $6000, no evidence would be

received to vary that writing. The parties did not object, however, to the evidence on which the court finds that $2500 of it was paid and the balance waived. From the closing of title to the delivery of the final payment, a period of almost two years, no demand was made for the $3500 or any portion thereof. Kuhn and Caltabiano relied on Parnoff for calculation of the balance due on the mortgage payments and, in fact, neither knew that interest on the mortgage was owing. The amortization tables submitted to the court by the defendants are dated July 8, 1986, although the dispute over whether payment in full had been made took place in 1984, when the plaintiff obtained amortization tables. The court finds that the check delivered by the plaintiff to Kuhn in the amount of $66,572.07 was payment in full of the amount due on the $300,000 note. The correct amounts due as shown by the amortization tables—$65,858.60 in principal plus $713.47 interest totaling $66,572.07—was delivered to Kuhn. The defendants' error in calculation is based on the claim that the interest for the month of December, 1983, was not made. The loan payments provided for interest payments in advance on the first of each month and the December 1983 payment of $4175 was made and included interest on the balance of $289,255.54, then owing.

The plaintiff, having paid the entire amount due under the mortgage debt, leaves the issue of whether the $3500 claimed due in the contract and her liability on the agreement to share one half of the payment of the real estate broker's fee are protected by the mortgage as the defendants claim. The court has found previously that the debt of $3500 was not a valid claim, since the sum of $1000, by which the contract price was increased, was never intended to be paid and Caltabiano waived the sum of $2500 claimed to be due by him. This sum, $3500, even if it had been a valid claim, would have merged into the deed.

"The general rule is that 'acceptance of a deed in pursuance of articles of agreement for the conveyance of land is prima facie the completion of the contract; and all stipulations contained therein . . . are merged in the deed although omitted therefrom.' " *Knight* v. *Breckheimer,* 3 Conn. App. 487, 490, 489 A.2d 1066 (1985). The defendants cite three cases as authority for their premise that the $3500 and the contract liability are covered by the mortgage. *Scripture* v. *Johnson,* 3 Conn. 211, 213 (1819); *Chamberlain* v. *Thompson,* 10 Conn. 243, 251 (1834); and *Mead's Appeal from Probate,* 46 Conn. 417, 432 (1878). In *Scripture,* the collateral debt referred to by the court was an execution levied on the property. In *Chamberlain,* the collateral debts were also secured by the premises, and, in *Mead's Appeal,* the collateral debts referred to were orally agreed to be secured by the land.

The defendants' claim that all collateral debts between the mortgagor and mortgagee are included in the mortgage is not borne out by the decisions. The collateral debts included by the courts are those existing on the property or intended to be encumbrances on the premises. There was no oral agreement that the sums claimed were intended to be encumbrances on the land, or an express agreement to the same effect. As has been noted, the judgment obtained against Kuhn by the real estate broker has been appealed and Kuhn therefore has paid nothing on it. The agreement between the parties reads: "This is to set forth an agreement by the parties that any payment for claims for real estate are to be paid equally by Ida Kuhn and Lorraine Shaw Koehm." In order for the plaintiff's liability on the broker's commission to become a fact, payment is required, until then, the plaintiff's liability does not arise. Kuhn's argument that the trial court's judgment is final does not require discussion, since her liability arises only on a payment and not a judgment.

As to the issue raised by the endorsements on the bank check for $66,572.07, the plaintiff payer wrote: "In full and final payment and release mortgage from Lorraine S. Koehn to Ida Kuhn and Anthony Caltabiano dated January 1, 1983," and the defendants wrote "Pay to the order of Laurence V. Parnoff, Trustee for deposit in trust account until dispute resolved." Under the common law, a check offered as payment in full or in full satisfaction initiates an accord and satisfaction and, if the creditor knowingly cashes such a check or otherwise exercises full dominion over it, he is deemed to have assented to the offer of accord. That acceptance of the offer of accord discharges the underlying debt and bars further claims relating thereto if it is supported by consideration. *County Fire Door Corporation* v. *C. F. Wooding Co.,* 202 Conn. 277, 281, 520 A.2d 1028 (1987). The defendants' reliance on General Statutes § 42a-1-207 referred to in their citation of *Kelly* v. *Kowalsky,* 186 Conn. 618, 442 A.2d 1355 (1982), does not avail them since the rule is that it has not displaced common law accord and satisfaction. *County Fire Door Corporation* v. *C. F. Wooding Co.,* supra, 283; see *Boohaker* v. *Trott,* 274 Ala. 121, 145 S.2d 179 (1962). The defendants' endorsement, deposit of the check and subsequent distribution of the funds indicates acceptance of the check in "full and final payment and release of mortgage" despite their attempt to dispute the amount due. If they intended to dispute the amount due on the note, the $3500 and the liability for the broker's commission, they should have returned the check.

While the court has considered all the issues raised by the special defenses and counterclaims of the parties Kuhn and Caltabiano, those defenses and counterclaims were stricken by the court, *Stodolink, J.,* December 10, 1986, which had the effect of removing them from the case. Practice Book § 158.

General Statutes § 49-8 provides for a mortgagee releasing the mortgage "(1) upon the satisfaction of the mortgage . . . ." It further provides that if the mortgagee fails to execute and deliver a release thirty days from a written request by certified mail, the mortgagee shall be liable for damages to any person aggrieved at the rate of $100 for each week. The plaintiff complied with § 49-8 by satisfying the mortgage and note in full and requesting release by certified mail, and was entitled to a release. Under § 49-8 (c), she is entitled to damages of $100 per week for the period from November 24, 1984, to date. That period of time is greater than the fifty weeks to which the statute is limited and so the damages are found to be $5000, together with statutory interest from November 10, 1985, to date.

The plaintiff claims that her attorney's fees are part of the loss to her which the statute permits by virtue of the language "an amount equal to the loss sustained by such aggrieved person as a result of such failure to execute and deliver a release, whichever is greater." The rule is that "absent contractual or statutory authorization, each party must pay its own attorney's fees." *Gino's Pizza of East Hartford* v. *Kaplan,* 193 Conn. 135, 140, 475 A.2d 305 (1984). The court interprets the words "damages and loss," both used in the statute, as not including attorney's fees in view of the rule stated in *Gino's Pizza of East Hartford* v. *Kaplan,* supra. Had the legislature intended to include attorney's fees, it would have so stated and this court cannot extend the statute to encompass the plaintiff's claim. See annot., A.L.R.4th 853, "Refusal to Discharge Mortgage—Damages," for a division of authority on the issue of attorney's fees as damages or loss.

The next issue is Parnoff's counterclaim, the first count of which he describes and argues orally and in his brief as a CUTPA action, brought under General

Statutes § 42-110b (a). The law suit instituted by the plaintiff is a single isolated instance as distinguished from "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." A single instance or even isolated instances of unfair practices do not warrant actions under CUTPA. *Mead* v. *Burns,* 199 Conn. 651, 666, 509 A.2d 11 (1986). She did not generally, as a restauranteur, conduct her trade or commerce by bringing lawsuits. "The special relief afforded by CUTPA requires, in a private dispute, the assertion of a public interest that is 'specific and substantial.' . . . Under guiding federal law, allegedly deceptive acts or practices which arise out of a private controversy are actionable only if the acts or practices have a potential effect on the general consuming public. . . . The private action authorized by CUTPA; General Statutes § 42-110g; is intended to provide additional sanctions to deter unfair trade practices that injure the general consuming public, rather than to provide additional remedies for the redress of entirely private wrongs. . . . " *Ivey Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 540, 461 A.2d 1369 (1983).

In addition thereto, the institution of the law suit against the attorney for the other two defendants during the entire transaction and dealings arising out of the mortgage was not an unfair or deceptive practice. The plaintiff was entitled to a release of mortgage as the court has previously found and the evidence discloses that the other two defendants had executed the release which was being held by the defendant attorney. Both Kuhn and Caltabiano had expressed surprise that the release had not been delivered to the plaintiff, and Parnoff had advised Weiss that he had the release. Also, he had taken the bank check in the amount of $66,572.07 and deposited it to his trustee account and distributed it to the other two defendants

and thereby he had made himself an integral participant in the dealings. In addition, the note and mortgage required notice to him of all actions thereon.

The second count of the counterclaim alleges abuse of process. "Abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose . . . . [It is the] use of process for a purpose not justified by law." *Schaefer* v. *O.K. Tool Co.,* 110 Conn. 528, 532, 148 A. 330 (1930). "[W]hile an ulterior motive often is present, it is not an essential element of the action." *Varga* v. *Pareles,* 137 Conn. 663, 667, 81 A.2d 112 (1951). The definition in *Schaefer* v. *O.K. Tool Co.,* supra, is buttressed by the rule that "the misuse of process issued in the course of judicial proceedings rather than the improper commencement of legal proceedings." *Paint Products Co.* v. *Minwax,* 448 F. Sup. 656, 659 (D.C. Conn. 1978).

The defendant Parnoff claims that the complaint does not state a cause of action against him. When the action was instituted in 1984, he had the right to address a proper pleading to the complaint which could have resulted in his removal as a party defendant. Instead, he not only did not enter such a pleading, but he did not object on that ground to any of the evidence that was presented at trial that involved his connection to the case. To his claim that he was unable to represent Kuhn and Caltabiano is the answer that he did, in fact, represent them whether aware or unaware that he was so conducting himself, in raising objections to evidence and in all the remainder of the entire trial proceedings. As the court has previously indicated, it was made known to the plaintiff by Kuhn and Caltabiano that Parnoff had a signed release which they were surprised had not been delivered, and he assumed control of the check which was marked payment in full so as to become part of the dealings of the parties.

The plaintiff did rely on her attorney Weiss to obtain the release, including the institution of suit and there is

nothing in the evidence that shows an ulterior motive or any intent to annoy or harass or prevent Parnoff from acting as attorney for the other defendants. His presence at the trial as a witness would have been required in any event, since he was an integral part of the entire transaction and dealings. No evidence was presented to the court to indicate damage of any kind or description to this defendant. The plaintiff did not misuse process regularly issued to accomplish an unlawful ulterior purpose.

Parnoff has not argued or briefed either federal or state constitutional issues raised in his counterclaim and the court deems them abandoned.

Judgment may enter on the complaint for the plaintiff against the defendants Kuhn and Caltabiano in the amount of $5000 plus statutory interest from November 10, 1985, to date, together costs. An injunction shall issue forbidding the defendants Kuhn and Caltabiano from continuing to refuse to provide the plaintiff with the release of the mortgage. The injunction shall be prepared by the plaintiff's attorney and submitted to the court for its approval. Judgment may enter for the defendant Parnoff on the complaint. Judgment may enter for the plaintiff on the counterclaim of the defendant Parnoff. The counterclaims of the defendants Kuhn and Caltabiano were previously stricken.