[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a federal credit union. It is the successor in interest to Kerite Employees Federal Credit Union by virtue of Science Park's merger with Kerite, evidenced by certificate of merger of September 30, 1992. By virtue of the merger, Kerite assigns all of its assets and choses of action to Science Park, described as the "continuing credit union." It is not disputed that the plaintiff Science Park is the assignee of whatever rights Kerite had, as concerns the issues addressed by this litigation.
One Lawrence Betts applied for and was thereafter granted a loan in the principal amount of $5,527.80 by the plaintiff's predecessor, Kerite, to purchase a 1988 Buick motor vehicle. A CT Page 14317 first lien was granted to Kerite as reflected by the Certificate of Title on file at the Motor Vehicle Department of the State of Connecticut.
The vehicle was destroyed by fire on December 11, 1992. The vehicle had a value of $6,250 at the time of its destruction. The plaintiff commenced suit against Betts in this action. On April 21, 1994, it obtained a judgment by default against Betts in the amount of $5,522.70 plus interest and attorney's fees, for a total of $8,305.55, plus costs of $205.20. There is nothing in the court file nor in the evidence, nor do the parties contend that the judgment has been paid so as to result in an equitable extinguishing of the plaintiff's lien.
The claim herein presented is as against Karas Motors, Inc. Karas Motors, Inc. is a corporation engaged in the business of towing and repairing automobiles. Towing is often accomplished at the request of the police department. On September 11, 1992, the Waterbury police department requested that this defendant tow the subject 1988 Buick automobile, as it was parked on a sidewalk and was therefore a public safety hazard. As is customary, the vehicle was towed to the defendant's place of business. Betts called the defendant after the tow, and was advised to call the police officer who caused the vehicle to be towed. The defendant heard nothing further from Betts. The vehicle contained no registration or insurance information, and the police towing ticket stated "hold, reg. ins."
On December 11, 1992, while in the custody of the defendant, the vehicle was destroyed by fire. On July 5, 1993, the remnants of the vehicle were "junked." It would have been junked sooner, but was being retained because the plaintiff, through their attorney, asked that the wreckage be held as "they were going to sue." The junking of the vehicle was accomplished in July 1993, with the consent of the plaintiff.
 I.
Although the complaint does not specifically claim that the destruction of the vehicle was caused by the negligence of the defendant, paragraph 7 of the first count claims that "Karas Motors had possession of the vehicle in its possession as bailee for hire." The plaintiff claims, in the brief, that the defendant is responsible by virtue of a high degree of care CT Page 14318 placed upon a bailee.
 ". . . once a bailment has been established and the bailee is unable to redeliver the subject of the bailment to the bailor in an undamaged condition there arises a presumption that the damage [or loss of the bailed property] was the result of the bailee's negligence . . . It is for the trier of fact to determine whether the bailee has proven the actual circumstances and thus rebutted the presumption."
F F Distributors, Inc. v. Baumert Sales Co., 164 Conn. 52, 53
(1972).
The court finds that the vehicle was confined within a barbed wire enclosure, that the premises were properly lighted, that the defendant employed a watch dog, that the premises were on a police patrol route, that the police would be on the premises three or four times per day. The court accepts the testimony of police detective Martin Egan, supported by the facts set forth in the police report that the cause of the fire was arson, by entry through a side window by an unknown person and that it was caused by a "molitov cocktail," and that the target of the attack was a black Pontiac. The court determines that the defendant has clearly rebutted the presumption. The loss was beyond the control of the defendant and was clearly not caused by negligence of the defendant.
 II.
The second part of the claim of negligence of the defendant is "but for the fire while the vehicle was in the possession of the defendant the plaintiff would have repossessed the vehicle, caused it to be sold and recovered its debt, which now exceeds $6,000.00."
It appears that the plaintiff is arguing that as the defendant failed to follow the time schedule for notifying the motor vehicle department, to wit, within forty days of the towing and storage of the vehicle (General Statutes § 14-150(i), the defendant was therefore negligent, and that the defendant's negligence in this respect was the cause, or a cause of the plaintiff's loss.
First, General Statutes § 14-150 does not require the CT Page 14319 defendant to give notice to anyone other than "the Commissioner" of the fact that he has the vehicle in storage. See General Statutes 14-150(i). Section 14-150(e) requires "the affixing department", i.e. the police department, to give notice to the owner the location of the storage and the fact that the vehicle may be sold within 90 days. The statute provides that the last owner of record shall be presumed to be the owner for these purposes. In summary, the defendant had no obligation to notify the plaintiff of the storage, or of any rights or prerogatives under these provisions of the statute.
The plaintiff cannot prevail on its claim that had the defendant given notice to the Commissioner within the forty days that the plaintiff would have received notice of the storage. Further, the plaintiff could not prevail on a claim that the defendant held the auto for an excessive period of time. The statute, General Statute 14-150(g), provides that the vehicle shall "be sold" if such motor vehicle has been so stored for a period of ninety days. A "notice of intent to sell", per General Statute 14-150(g), was sent to the Commissioner, immediately before the end of the ninety day period.
The vehicle was not held for an excessive period of time. The court credits the testimony that it would have been sold within two to three weeks after notice was sent to the Commissioner, as that is the normal course of these matters. At the latest, the vehicle would have been sold by the end of December 1992. The plaintiff did not make inquiry at the Department of Motor Vehicles until January of 1993, at which time it was informed, by certificate of search issued January 27, 1993, that the defendant had filed an "abandoned" vehicle report with that department. (This is a misnomer by the Department. The form H-100 identifies custody by virtue of police activity.) The statute contains no requirement that the defendant or the Commissioner of Motor Vehicles inform either the owner or the lien holder or anyone else that the vehicle is in the custody of the defendant. Nor has the plaintiff presented any evidence to the effect that any regulation of the Commissioner, or customary practice, would cause either the Commissioner or the defendant to notify anyone of the filing of a notification of custody, which is a forty day form submitted pursuant to General Statute14-150(i). The plaintiff cannot prevail on its claim that if the form had been filed within the forty days, it would have had notice of the detention of the vehicle and hence, would have repossessed it, subject to the defendant's storage lien. CT Page 14320 Further, the plaintiff could not prevail on a claim that the retention of the automobile was a proximate cause, reasonably foreseeable cause, of the destruction of the vehicle by the unforeseeable destruction by arson. See Pisel v. StamfordHospital, 180 Conn. 314, 322 (1980).
 III.
The plaintiff further argues that General Statute § 14-197(c) causes the defendant to "forfeit all claim and liens for its garaging, parking, towing or storing" of this motor vehicle. The statute provides that the "operator of a place of business for garaging, repairing, parking or storing vehicles for the public, in which there is stored an abandoned or unclaimed vehicle for a period of thirty days, shall, within five days after the expiration of that period, report the vehicle as unclaimed or abandoned to the Commissioner." However, the statute further provides "a vehicle left by its owner whose name and address are known to the operator or his employee is not considered unclaimed."
The plaintiff's argument fails in three respects. First, this statute, 14-197c, is a general statute pertaining to "abandoned or unclaimed" motor vehicles. However, the provisions of General Statute 14-150 is a specific statute dealing with vehicles towed at the direction of the police department as a "menace to traffic." Any notice requirement would be controlled by General Statute 14-150(i). The vehicle is not claimed to be "unclaimed or abandoned", as reported by the defendant in the filing of Form H-100, but rather, the form specifies that the defendant is proceeding under Section B of that form pertaining to "motor vehicle was towed by a licensed wrecker at a . . . request of the police (under Section 14-150)". Third, if it be claimed that the owner, after contacting the defendant, subjectively determined not to regain possession of the vehicle, a proper interpretation of the statute would lead to the conclusion that the vehicle was "left by its owner", thereby causing the exception to the statute to be applicable. The plaintiff has not satisfied its burden of proving that a storage lien forfeiture has occurred under the provisions of General Statute 14-197.
 IV.
The plaintiff further contends that the defendant received CT Page 14321 $5,000.00 from its insurance carrier for the total loss to this vehicle and that the sum exceeds the value of the defendant's lien. Hence, the plaintiff claims that it should be entitled to the excess of those funds, to the extent that they exceed the defendant's lien.
The court is unaware of the circumstances or of the insurance policy provisions whereby the payment was made by the defendant's insurer to the insured. The proof of loss submitted by the defendant to its carrier claimed "vehicles owned by insured were damaged by unapprehended parties." Although no evidence is presented by the parties as to the defendant's source of title, yet this court will not go beyond the fact of payment to analyze the contract provisions resulting in this payment.
Had the vehicle not been destroyed by fire, General Statute14-150(g)(h) requires that the garage keeper, after the 90 days, shall "sell the same at public auction for cash," upon advertisement by newspaper and by giving notice to the owner by certified letter at least five days before the sale. Section (h) provides that from the proceeds of the sale the garage owner shall be paid his lien, and after deducting all expenses connected with such sale, the remaining proceeds shall be paid to the owner, if claimed within one year from the date of sale. After the one year, it shall escheat to the state.
Had the vehicle not been destroyed by arson, and had the vehicle been sold at auction, the preliminary steps having been taken, by filing the form H-100, the defendant would have had its lien paid in the normal course of the process. Surplus funds would have remained in escrow. The plaintiff would have taken such steps as are appropriate to obtain payment of the excess funds, having the right to garnish the funds by virtue of the default of the debtor-owner. The plaintiff would have had actual notice by virtue of the certificate of search furnished to it by the Commissioner of Motor Vehicles on January 27, 1993. The plaintiff would have levied upon the garnished funds by virtue of its judgment of April 21, 1994.
The sale did not take place because of the arson. Had the matter ended there, the plaintiff's rights to the security would have been extinguished by the destruction of the security at the time of the arson. The case of Dutch Point Credit Union v.Caron Auto Works, Inc., 36 Conn. App. 123 (1994), cited to the CT Page 14322 court, is not in point. Here, there was no sale, and hence, the unconstitutional nature of the statute, allowing such sales without giving actual notice to the lien holder prior to such sale, is not applicable.
 V.
As heretofore determined, the defendant is not liable to the plaintiff by virtue of any negligence as concerns the safeguarding of the secured property. The defendant is not liable to the plaintiff by virtue of any negligence in failing to file the notice prescribed by General Statute 14-150(i). Hence, the issue focuses on whether the defendant is liable to the plaintiff as concerns surplus funds paid by the insurance policy, above and in excess of the amount to which the defendant would be entitled by virtue of the defendant's storage lien.
As aforesaid, the plaintiff filed the claim with its insurer as owner of the vehicle. This is not a claim under the liability provisions of the policy, seeking indemnity or protection against its negligence and consequent responsibility to third parties. Nor is the claim limited to covering the insured's rights to reimbursement only to the extent of its lienholder's rights under General Statutes 14-150(g).
This court determines that in submitting the claim as owner, the defendant claiming reimbursement for the full value of the automobile ($6,252.00 less $1,000.00 deductible and $250.00 salvage value) the claim was submitted and paid to the defendant for and on behalf of all of the parties who had a right, title and interest in and to the secured vehicle. The court determines that the payment which was made to the defendant was made to the defendant for and on behalf of all the parties who had a right, title and interest in and to the secured vehicle. As such, the funds stand in lieu of the security itself, as of the date of destruction, December 11, 1992.
This court determines that the defendant's storage lien was in the amount $2,685.00, consisting of five days of initial storage, September 11 through September 15, at $15.00 per day, and eighty-seven days subsequent thereto through December 11, at $30.00 per day, for a total of $2,685.00. Additionally, $40.00 was charged for towing, resulting in a total lien of $2,725.00. Although $250.00 was claimed by the defendant to its insurer as CT Page 14323 salvage value, there is no evidence before the court to conclude that this sum, or any sum, was paid to the defendant when the vehicle was junked by agreement of the parties, later in 1993. The surplus of the insurance proceeds, above the defendant's lien, was $2,275.00.
The court determines that these surplus funds, $2,275.00 represents the balance of the collateral. General Statutes 42a-9-503
provides "Unless otherwise agreed a secured party has on default the right to take possession of the collateral."
The complaint in the instant case claims, in its prayer for relief, "All other equitable relief as the court may deem necessary." Although the court does not find that the plaintiff is entitled to "damages" at common law by virtue of the plaintiff's claims of negligence, the court does determine that the plaintiff is entitled to the delivery to it of the value of its interest in the security, to the amount of $2,275.00. The court further determines that the plaintiff is entitled to costs as prevailing party, as and to the extent provided by statute.
Lastly, the plaintiff contends that the actions of the defendant constitutes an unfair trade practice in violation of C.G.S. 42-110b in that "Defendant failed to provide the plaintiff with Notice that its lien was being removed from the title to its vehicle." As aforesaid, the defendant had no obligation to notify the owner, let alone the plaintiff, under the provisions of the statute. The only obligation of the defendant would be to notify the owner by registered mail, and the public by publication as to the "time and place of sale" under the provisions of General Statutes 14-150(g). No such sale was ever scheduled, as arson intervened. Not only does the claim fail on the factual basis so alleged, but would further fail as the court finds that there is no evidence to indicate that any failure to give notice to the Commissioner under General Statutes 14-140(i) was other than mere inadvertence and does not indicate more than a single isolated act of inadvertence. See Koehm v. Kuhn, 41 Conn. Sup. 130 (1989); Quimby v.Kimberly Clark Corp., 28 Conn. App. 660 (1992).
Judgment enters that the defendant pay over to the plaintiff the sum of $2,275.00 together with statutory costs to the prevailing party.
L. PAUL SULLIVAN, J. CT Page 14324