[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 25, 1994, the court, Austin, J., filed a memorandum of decision in the above-captioned matter. Two cases were heard by Judge Austin pursuant to a motion to consolidate. The first of the two cases, Dennis Steiger, etux v. Town of Old Lyme. et al, sounded in in three counts claiming negligence in the inspection of certain premises incident to the issuance of a certificate of occupancy, and in the issuance of a subsurface discharge permit for a septic tank. The second case, Dennis Steiger, et ux v. J.S.Builders, Inc., Blue Spruce Developers. Inc., TradewindDevelopers, Inc. John I. Slezak, Louisette Slezak and SusanMoreau, sounded in eleven counts:
 The first count against J.S. Builders, Inc. claimed breach of contract, failure to perform the work required under the contract and defective work performed in an unworkmanlike nature.
 The second count against J.S. Builders, Inc. claimed a breach of warranties under Connecticut General Statutes § 47-118 and § 47-121.
 The third count against J. S. Builders, Inc., Blue Spruce Developers, Inc., John I. Slezak, Louisette Slezak and Susan Moreau claimed the corporate defendants had no separate mind, will or existence and that control of the same was to commit fraud and wrongdoing.
 The fourth count against Blue Spruce Developers, Inc. claimed breach of warranties under § 47-118 and § 47-121.
 The fifth count against John I. Slezak individually claimed that Slezak had complete control over the corporate defendants so that the corporations had no separate mind or will and were used to commit fraud and wrongdoing. CT Page 2948
 The sixth count against Tradewind Developers, Inc., incorporates paragraphs 1 through 9 of count three and claims the defendant Tradewind is liable to plaintiffs.
 The seventh count against Tradewind developers, Inc., incorporates paragraphs 1 through 9 of count three and claims a breach of warranties under Connecticut General Statutes § 47-118 and § 47-121.
 The eighth count against the defendant John I. Slezak incorporates paragraphs 1 through 8 of counts two and nine and 10 of count three and claims a breach of warranties under Connecticut General Statutes § 47-118 and § 47-121.
 The ninth count against Louisette Slezak, J.S. Builders, Inc., Blue Spruce Developers, Inc., Tradewind Developers, Inc., John I. Slezak and Susan Moreau incorporates paragraphs 1 through 8 of count three and recites a claim to convey a driveway located within the boundaries of plaintiff's property and a failure to do so.
 The tenth count is directed against the same defendants as in count nine and claims that the subject driveway referred to in count nine is on property of the defendants.
 The eleventh count is directed against the same defendants as in count nine and claims an unfair trade practice in violation of § 42-110a et seq.
The two consolidated cases arose out of the building of a two-story gambrel-type roof residence with a basement. The purchase price was $185,117.00. The builder was to provide a C.O. The two cases involved claims of defective workmanship, failure of various municipal officials to inspect, etc. The claims of faulty workmanship and material covered an entire spectrum from basement to roof regarding electrical, plumbing, windows and overhangs. Claims were made regarding septic system, water quality and improper location of the driveway.
After the cases had been returned to the court in June, 1989, and in September, 1990, numerous preliminary motions, CT Page 2949 objections, requests to revise, motions to compel, motions for default, etc. were filed. Various parties and individuals were deposed and discovery was instituted.
Trial to the court commenced on October 5, 1993 and continued on following dates consisting of twelve additional trial days through November 24, 1993.
On February 5, 1994, Judge Austin filed a memorandum of decision regarding the consolidated cases consisting of some 85 pages.
The court found as follows.
 The court is satisfied that the real principal actor was John Slezak, but the other individuals must be treated in the same vein by virtue of the foregoing.
 The court finds that the plaintiffs have not sustained or proved by a preponderance of the evidence their claims against the defendant Joseph Hart nor the defendant Frank Keen, and by virtue thereof, must fail as against the Town of Old Lyme.
Judgment is entered in the favor of Joseph Hart.
Judgment is entered in the favor of Frank Keen.
 Judgment is entered in the favor of the Town of Old Lyme.
 By virtue thereof, no attorney's fees are awarded against Hart, Keen or the Town of Old Lyme.
 The court finds that the plaintiffs have sustained and proved some of their allegations against the defendants Blue Spruce Developers, Inc., Tradewind Developers, Inc., J.S. Builders, Inc., John Slezak, Louisette Slezak and Susan Moreau by a preponderance of the evidence and by virtue of the defaults and the effect of the order of preclusion.
Judgment may enter in favor of the plaintiffs CT Page 2950 and against the defendants Blue Spruce Developers, Inc., Tradewind Developers, Inc., J.S. Builders, Inc., John Slezak, Louisette Slezak and Susan Moreau as follows:
Replumb entire house to code $ 6,850.00
 Separate items — heat incident thereto $ 1,010.00
Electrical $ 5.00
Sheetrock $ 2,040.00
Rear exterior siding $ 840.00
Repainting $ 2,160.00
 Additional sheetrock, repainting, carpeting $ 650.00
Basement girder shim $ 168.00
Fireplace hearth $ 1,060.00
Septic system clay fill $ 2,926.50
Foundation snap ties $ 723.00
Front step concrete pads $ 318.00
Roof rake edge $ 720.00
Miscellaneous $ 1,750.00
10% overhead $ 1,335.50
10% profit $ 1,335.50
6% sales tax $ 801.33
Komnarski survey $ 1,450.00
 Total $ 26,142.83 ========= CT Page 2951
 The court finds that the conduct of the defendant John Slezak clearly was contrary to public policy and was deceptive regarding using an unlicensed plumber and that CUTPA has been violated.
 The court allows $7,500.00 for attorney's fees as against the defendants.
The plaintiffs appealed claiming that: 1) the trial court's award of damages is against the weight of evidence and contrary to law; and, 2) the trial court applied the incorrect standard in calculating the award of attorney's fees pursuant to the contract and CUTPA. The appellate court reversed only as to the award of attorney's fees and costs and the case was remanded for a hearing to determine, consistent with the opinion of that court, the amount of attorney's fees and costs that the plaintiffs may recover.
Upon remand, the trial judge (Austin, J.), recused himself in open court on the record. A complaint had been filed by one of the parties to Judicial Review. Judicial Review found no probable cause.
Thereafter, the matter was referred to this court by the presiding civil judge for New London Judicial District, (Hendel, J.). A one-day evidentiary hearing was held before this court (Walsh, J.) which consisted of the testimony of the general nature of the cause of action, introduction of various copies of bills, time sheets, testimony of plaintiff's counsel as to the general nature of the questions of law and fact, testimony from plaintiff's counsel as to counsel's education, training, experience and background.
The appellate court's decision regarding the subject case speaks only to the question of attorney's fees pursuant to the CUTPA provision which allows the awarding the same. C.G.S. § 42-110g(d). At the evidentiary hearing, this court made inquiry as to whether or not any claim was being made for any attorney's fees other than those arising out of the CUTPA claim. The attorneys have stipulated and agreed that any attorney's fees that are to be awarded on this matter will be pursuant to CUTPA.
The appellate court found, "the trial court focused on CT Page 2952 only one of the twelve enunciated guidelines — the reasonableness of the relationship between the award of attorney's fees and the award of damages." Steiger v. J.S.Builders, Inc., 39 Conn. App. 32, 39 (1995). The appellate court concluded that "the trial court abused its discretion in seizing from the full panoply merely one guideline, to the exclusion and disregard of all others. To interpret the attorney's fees provision of CUTPA so narrowly would render insignificant the legislative intent — it would neither enhance the private CUTPA remedy, nor serve to encourage private CUTPA litigation." Id.
The court further set out those criteria in determining reasonable attorney's fees as follows:
1) the time and labor required;
2) the novelty and difficulty of the questions;
 3) the skill requisite to perform the legal service properly;
 4) the preclusion of other employment by the attorney due to acceptance of the case;
 5) the customary fee for similar work in the community;
6) whether the fee is fixed or contingent;
 7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
 9) the experience, reputation and ability of the attorneys;
10) the "undesirability" of the case;
 11) the nature and length of the professional relationship with the client; and
12) awards in similar cases. CT Page 2953
Accordingly, this court finds that there is no question that a great deal of time and labor has been expended. From what evidence this court heard before it, this court is unable to determine how much was required. The questions of law and fact are not particularly novel or difficult. Other than that counsel testified that the defendant was reticent in supplying information, there appears to have been no particular requirement, training or experience that counsel was required to have except to act with dogged persistence in pursuit of information from such reticent defendants. Counsel testified that although he applied a great deal of time to this particular case, it did not preclude him from other employment due to said commitment to the subject case.
The attorney's fees involved in the present case were substantially greater than what would ordinarily be incurred in a case such as the subject case. The hourly charges are in accordance with the accepted and ordinary hourly fees charged by attorneys in New London Judicial District as is the fee for the appeal. The amount recovered was substantially less than the original claim. The plaintiff's attorney enjoys a good reputation and he has acquired the experience and ability of attorneys of his age and background. He was and is well-qualified to handle the subject case in its preparation for trial and appeal. The case involves a dispute concerning the building of a new home with all of those problems associated therewith including a CUTPA claim. This court cannot conclude that such cases are undesirable. Such cases can be difficult to prepare and try involving various types of expert witnesses. For attorneys that practice in the building contract and CUTPA areas, the case would be a desirable case. Those that practice in the area of personal injury or probate might find it undesirable. The court concludes that the acceptance of the case by counsel is because counsel decided to take it on. The fact that others refused to take the case because it involved more that they felt it was worth, or that they did not have the interest in applying that much time and effort does not make the case an undesirable case. There is no evidence as to the nature and length of the professional relationship of counsel with the client except as to this case. Awards in similar cases vary from one extreme to another. Building contract cases involve various and sundry issues and may result in totally different amounts of money damages. CT Page 2954
As previously stated, the complaint was in eleven counts. Only the eleventh count claims a violation of CUTPA (Conn. Gen. Stat. § 42-110a et seq.)
Count eleven sets out twelve paragraphs by incorporating paragraphs 1 through 8 of count one, 9 through 11 of count nine and adding a paragraph 12. Plaintiff's counsel seek attorney's fees pursuant to Conn. Gen. Stat. § 42-110 et seq; the trial court, Austin, J., found that:
 The plaintiffs have sustained and proved some of their allegations against the defendants Blue Spruce Developers, Inc., Tradewind Developer's, Inc., J.S. Builders, Inc. John Slezak, Louisette Slezak and Susan Moreau by a preponderance of the evidence and by virtue of the default and the affects of the order of preclusion.
The court further found
 that the conduct of the defendant John Slezak clearly was contrary to public policy and was deceptive re: using an unlicensed plumber and that CUTPA has been violated. (Memorandum of Decision, p. 85.)
This court has reviewed the memorandum of decision of Austin, J. to determine what part the CUTPA violation and related damages played in the trial and preparation of the subject case. As this court has previously stated, two cases were consolidated and Judge Austin's decision, as set forth in his memorandum dated February 24, 1994, addresses both of those cases as consolidated.
 A subcontractor or employee of J.S. Builders, Inc., Eugene Rourke, applied for a plumbing permit to install the plumbing systems at the subject premises. His application showed a license number which was not a valid number (Memorandum of Decision, p. 24, 25).
The rough plumbing was installed and the builder did not subsequently call the building inspector to inspect the rough plumbing as installed (Memorandum of Decision, p. 26). The CT Page 2955 plaintiffs had agreed that they would buy the house before the plumbing was complete and finish it themselves in order to save money. (Memorandum of Decision, p. 27).
 Before the builder had completed the work on the house to the Steiger's satisfaction, the builder and the Steigers had a dispute over continued work by Eugene Rourke, the unlicensed plumber, and as a result the builder did not complete the work he and the Steiger's had agreed to. The Steigers then notified the builder that they were going to hire their own plumber to finish the work. The Steiger's hired a heating contractor to correct or complete the work on the heating system. That contractor corrected some of the work required by the heating system but not all of it, and left certain code violations. The Steigers did not hire any plumbers other than Economy Oil to complete the house and did not hire any contractors to do other work on the house. The only work that the Steiger's had done themselves to complete or correct the work in the house was to change the drain outlet for the washing machine in their basement. Mr. Steiger installed an outlet fitting that did not have a trap and which was the wrong kind of material, both of which were code violations.
 The plaintiffs complained of an improper ground in their electrical system. That work could have been corrected for roughly $3 to $5 and could have been corrected by the Steigers themselves. The Steigers lived in the house for six years without correcting the improper ground in their electrical system.
 The Steigers complained of septic gases in their house, which escaped through unplugged drain openings in the basement and the second floor main bath and through the empty main bath toilet and bathtub.
 The Steigers could have cured all of the known causes of septic gases in the basement by putting an expandable plug cap in the original washer outlet fitting instead of the improper one CT Page 2956 installed by Mr. Steiger.
 The Steigers could have corrected all of the known causes of septic gas in the second floor main bath by putting an expandable plug in the drain pipe under the sink and by putting water or vegetable oil in the traps in the toilet and bathtub.
 The measures necessary to block these sources of septic gas entailed minimal expense and could have been performed by the Steigers themselves.
 The Steigers were aware of the importance of sealing off the septic gases and correcting the electrical ground because they had been told that by their own expert witness, Mr. Alves. (Memorandum of Decision, p. 30, 32.)
 The plumbing system at the Steiger's house is the part of the house which had the most building code violations — all of the work necessary to correct the building code violations in the Steiger's house could have been performed without requiring that they move out of the house. (Memorandum of Decision, p. 37.)
The court found that the plaintiff's claim for emotional distress apparently arose because:
 They had lived in a house that had ambient septic gases for six years. Yet notwithstanding the availability of the escrow funds, the many thousands of dollars that they have spent on attorneys and experts in this litigation and the $35,000 home equity loan which they obtained they have not taken any steps to improve conditions in their house. Their witness, Mr. Alves, said that their failure to correct the septic gas leak and the electrical ground was reckless. (Memorandum of Decision, p. 61, 62.)
The trial court in the company of counsel viewed and inspected the Steiger residence spending some one and a half hours at that premise. At that time the court made certain observations regarding certain plumbing defects. One of the CT Page 2957 second floor bathrooms had a bad odor. The bathroom was all
closed up and portions of the plumbing were not connected. The master bathroom on the second floor had a hole in the floor behind the toilet installation. This had apparently caused the hole in the ceiling in the area of the first floor entry way. . . . The overall impression of the court was that of a basically sound structure with defects that are capable of reasonable resolution. The trial court noted:
 The court has carefully reviewed the estimate of the witness Grillo which totals $121,183.11. Grillo's approach was to gut the entire residence and start anew. The court cannot accept this approach nor is it justified, particularly after having had the opportunity to inspect and view the property. In addition, in many respects, Grillo was not qualified nor did he possess the requisite expertise or hold the proper licenses or permits. Furthermore, Grillo's approach was to please the plaintiffs in all and every respect and wish. (Memorandum of Decision, p. 80.)
There were other various and sundry claims for damages inside, outside and about the subject premises which the court rejected. The court found code violations in the plumbing system and found that the most economical way to bring the plumbing system up to code would be to remove it and replace it. (Memorandum of Decision, p. 76, 77.) The court further found that the cost of doing that would be $6,850 plus $1,010 for repairing the heating system. Some of the drywall and sheetrock would have to be removed at a cost of $2,040. Outside clapboard would have to be removed to get access to the kitchen vent at the cost of $840. In addition, repainting the affected area ceilings and walls would be $2,160. Additional work regarding heat pipes, including sheetrock, painting and carpeting is $650. Miscellaneous costs in protecting the contents of the house, cleanup, dumpsters and permits was found to be $1,750. The trial court found fit to add 10 percent for profit and 6 percent for Connecticut sales tax. (Memorandum of Decision, p. 76, 78.) The total out of pocket damages as set out above is $18,838.00.
This court is presented with several different claims for Attorney's fees and costs by the plaintiff. CT Page 2958
Plaintiffs' "Exhibit 6" in the present case claims the sum of $33,106.95.
Plaintiff claims in his post trial memorandum in support of Attorney's fees filed with the court on March 6, 1996, as follows:
 The total amount claimed is $25,103.07 plus costs of $4,185.90, an appellate transcript fee of 284.48 and a flat fee for the appeal of $3,534.00 inclusive of costs. Credit was already given in the legal fees for the time billed to this file (38 hours) which should have been billed to the file in the companion case. A credit of $375.00 must be given for double entry on November 23, 1993. And a further credit of $345.00 is to be given for legal fees associated with the Middletown suit.
 Total Legal fees are $27,217.07 plus costs of $4,470.38 which includes the costs at the time of trial and the fees for the transcript for the appeal.
In any event, the claim for attorney's fees and costs is $30,000 plus.
The trial court addressed the issue of attorney's fees as follows.
 Plaintiff's claim damages under CUTPA, Conn. Gen. Stat. § 42-110b et seq. CUTPA allows for both punitive damages and attorney's fees. A violation of CUTPA occurs when the conduct has a tendency or capacity to deceive and results in ascertainable loss. Aurigemma v. Arco Petroleum Products Co., 734 F. Sup. 102 (D. Conn.). There need not be proven an actual intent to deceive, just that the conduct have a tendency to do so. Covenant Radio Corp. v. Ten Eighty Corp., 35 Conn. Sup. 1 (1977). A single act is sufficient to support an action for CUTPA. Koehm v. Kuhn, 41 Conn. Sup. 130. The purpose of the act is to foster honesty and full disclosure in the conduct of business. Bailey Employment Systems, Inc. v. Hahn, 545 F. Sup. 62. CT Page 2959 (Memorandum of Decision, p. 81.)
The trial court went on to state that one of the criteria to awarding a fee is "the amount involved in the results obtained." The trial court did not stop there, however, but went on to find the following.
 The results could have been obtained years ago if the plaintiffs had allowed their suit against the corporations and Slezak, et ux and Moreau to proceed to trial in Middletown instead of withdrawing it on the eve of trial there.
 The plaintiffs claim and offered testimony as to attorney's fees as against Hart, Kneen and Old Lyme of $46,906 plus costs of $4,023.02, and as against the corporations and Slezak, et ux and Moreau of $22,267.50 plus costs of $2,845.57.
 The court has carefully considered and reflected upon the credibility of all the testimony presented during this lengthy proceeding. The court has considered the demeanor of the witnesses, their candor or lack thereof, their opportunity to observe and interpret those observations, their interest, if any, bias or prejudice, expertise and/or training.
 One of the most distressing aspects of the proceedings has been the almost total lack of any conduct on the part of the plaintiffs to mitigate damages. (Memorandum of Decision, p. 82.)
 The amount of time and effort expended in this matter has been great. It is unfortunate that the original action against the builder in Middlesex Judicial District was not pressed to a conclusion several years ago. (Memorandum of Decision, p. 85.)
The total cost to repair the plumbing and to put the premises back in proper condition thereafter as determined by Judge Austin is $18,838.00. The overall impression of the trial court was that the premises was basically a sound structure with defects that were capable of reasonable resolution. CT Page 2960
The court, while exercising its discretion in considering attorney's fees, should, in addition to those criteria set forth by the appellate court decision, also consider the plaintiff's behavior in dealing with the defendant. The trial court, Judge Austin, made such observations and findings as this court has set out in the aforesaid. The trial court found that the plaintiff's conduct played a part in perpetuating and protracting this case. It would be unfair for this court to award attorney's fees that were unreasonably or unnecessarily generated. It would also be contrary to the remedial nature of the statute under which it is claimed. Certainly it is implicit in the remedial statutory scheme of CUTPA that those who claim such a violation should not themselves act inappropriately in prosecuting the claim.
This court cannot and will not ignore the observation and finding of the trial court, Austin, J. It would be totally inappropriate under the circumstances to merely rubber stamp as approved submitted time sheets and claimed fees.
The CUTPA violation was a claim that formed a part of a very extensive legal proceeding. The CUTPA violation was related to the plumbing and related damage. This court also recognizes that in order to hold the individual defendants liable for the CUTPA violation, counsel was required to produce evidence that pierced the corporate veil which involved time and expense. This court has taken that fact into consideration.
A finding of a CUTPA violation should not be considered as a vehicle for the collection for all the fees and costs of the case. The claim against these defendants exceeded $125,000. The court rejected much of what the plaintiff claimed. The appellate court affirmed the court in that regard. Whatever attorney's fees and costs that are awarded are awarded pursuant to a successful CUTPA claim against the corporation and the individual defendant.
This court awards the attorney's fees and costs in the total sum of $10,000.
Walsh, John F., J. CT Page 2961